# Illinois Official Reports

## Appellate Court

---

### *People v. Richardson*, 2015 IL App (1st) 130203

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOS, Plaintiff-Appellee, v. JAVONTE RICHARDSON, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-13-0203 |
| Filed | August 10, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-14227; the Hon. Dennis J. Porter, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Abishi C. Cunningham, Jr., Public Defender, of Chicago (Jeffrey Walker, Assistant Public Defender, of counsel), for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, Joan F. Frazier, and Joseph Alexander, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Presiding Justice Delort and Justice Harris concurred in the judgment and opinion. |

## OPINION

¶ 1   Following a bench trial in the circuit court of Cook County, defendant-appellant Javonte Richardson was convicted for the offense of unlawful use of a weapon by a felon (UUWF) and sentenced to four years of imprisonment. See 720 ILCS 5/24-1.1 (West 2010). On appeal, the defendant argues that: (1) his prior conviction for aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6 (West 2010)), which was premised on a statutory provision since held unconstitutional by our supreme court, cannot stand as a predicate offense to support his UUWF conviction; (2) the State's indictment for the charge of UUWF was invalid and "failed to state a cause of action" because the defendant's predicate AUUW felony was based on an unconstitutional statute; and (3) the arresting police officers violated his constitutional rights by conducting an unreasonable search when they stopped the vehicle in which he was a passenger and conducted a pat-down search of his person. For the following reasons, we reverse the judgment of the circuit court of Cook County.

¶ 2                                    BACKGROUND

¶ 3   In 2010, in a prior case, the State charged the defendant (who was known at the time as Pierre Robinson), with a Class 4 violation of Illinois's AUUW statute. See 720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2010). The defendant pleaded guilty to the AUUW violation, a felony charge, in exchange for a sentence of two years' probation.

¶ 4   This subsequent case arose in August 2011, when the defendant was arrested in possession of a handgun following a traffic stop on St. Lawrence Avenue near 74th Street in Chicago, Illinois. The defendant was charged with one count of UUWF and nine counts of AUUW. The UUWF charge alleged that the defendant possessed a firearm after being adjudicated a felon, due to his guilty plea to the AUUW charge in his prior case in 2010.

¶ 5   Prior to trial, the defendant filed a motion to quash his arrest and suppress evidence which alleged that the arresting officers did not have a reasonable suspicion to stop the vehicle in which the defendant was riding. On October 14, 2011, the trial court conducted a hearing on the motion to suppress, at which it heard testimony from the arresting officers as well as the defendant. Ayokunle Akinbusuyi, the Chicago police officer who arrested the defendant, testified that he and his partner, Officer Mark Johnson, were on patrol in a marked police car at 10:52 p.m. on August 21, 2011 when they received a report of an auto theft at 742 East 79th Street. The officers proceeded to drive to the address where they spoke to the victim of the theft, Aaron Edwards. Edwards described the stolen vehicle as a green Ford Taurus station wagon. Edwards was unable to provide a license plate number or any other distinguishing characteristics of the car but did tell the officers that his culinary tools were inside the vehicle.

¶ 6   Approximately 90 minutes after leaving Edwards, while driving in the area of 7400 South St. Lawrence Avenue, the officers identified a vehicle matching the description provided by Edwards. The officers stopped the vehicle and observed two individuals inside, the driver and a passenger (the defendant). Officer Akinbusuyi approached the vehicle from the passenger's side while Officer Johnson approached the driver's side. Officer Johnson requested that the driver exit the vehicle after the driver was unable to produce a driver's license or insurance information. As the driver exited the vehicle, Officer Akinbusuyi observed the defendant, who was sitting in the front passenger seat of the vehicle, mumbling

and rummaging through the vehicle's center console. Additionally, Officer Akinbusuyi noted that the defendant appeared to turn toward the interior of the vehicle while moving his hands near his own waist "like he was stuffing something in his waistband." Officer Akinbusuyi requested that the defendant show his hands. Once the defendant did not comply with that request, Officer Akinbusuyi asked the defendant to exit the vehicle.

¶ 7    Officer Akinbusuyi then commenced a brief pat-down search of the defendant and discovered an unloaded, highpoint, semi-automatic handgun in the defendant's waistband. The defendant was then handcuffed and placed into the officers' squad car before being transported to the police station. Officers Akinbusuyi and Johnson subsequently searched the green Ford Taurus station wagon and found Edwards' culinary tools inside the vehicle.

¶ 8    The defendant testified at the hearing on the motion to suppress that Eric Cochran, the driver of the green Ford Taurus, had picked him up approximately 10 to 15 minutes before the vehicle was stopped by police. The defendant also corroborated Officer Akinbusuyi's testimony that Cochran told the officers that he did not have a driver's license or insurance information. However, the defendant's testimony differed from Officer Akinbusuyi's testimony that the gun was recovered from the defendant's waistband during a pat-down search. According to the defendant, the officers removed Cochran and himself from the vehicle before commencing a search of the vehicle during which the officers found both the firearm and Edwards' culinary tools.

¶ 9    The trial court, in its findings of fact, adopted the testimony of Officer Akinbusuyi. The court initially found in favor of the defendant and granted the motion to quash his arrest and suppress evidence on October 14, 2011, agreeing that the officers did not have reasonable suspicion to stop the vehicle. The State filed a motion to reconsider the trial court's ruling, arguing that the officers had reasonable suspicion to stop the vehicle because it fit the description of a car that had been reported stolen in the area earlier that evening. After hearing arguments from both sides, the trial court reversed its previous ruling and denied the defendant's motion to quash his arrest and suppress evidence on November 4, 2011. At that time, the defendant elected a bench trial.

¶ 10    The court conducted a bench trial on January 18, 2012, during which Officer Akinbusuyi testified to the events of August 22, 2011 consistent with his earlier testimony at the hearing on the motion to quash arrest and suppress evidence. Also at trial, the State entered a certified copy of conviction showing that the defendant, under the name Pierre Robinson, had pleaded guilty to the Class 4 AUUW felony charge in 2010. No further evidence was introduced at the bench trial. After closing arguments from both parties, the trial court made a general finding that the defendant was guilty of count one, the UUWF violation. The trial court further ruled that AUUW counts six, seven, and ten, merged into count one. The State declined to prosecute the remaining counts. Thus, the defendant was convicted of a single count of violating the UUWF statute.

¶ 11    The defendant subsequently filed a motion for a new trial, arguing that the State failed to prove him guilty beyond a reasonable doubt because no weapon was admitted into evidence. The defendant further argued that the trial court erred in denying his motion to quash his arrest and suppress evidence. The trial court denied the defendant's motion for a new trial. On February 17, 2012, the trial judge sentenced the defendant to four years' imprisonment in the Illinois Department of Corrections, to be followed by a two-year term of mandatory supervised release, in addition to statutory fines and costs. On the same date, the defendant's

trial counsel informed the court that the defendant wished to file a notice of appeal. The trial court ordered the notice of appeal to be filed and appointed the State appellate defender to represent the defendant. Accordingly, we have jurisdiction pursuant to Illinois Supreme Court Rule 606(a) (eff. Jan. 1, 2013).

¶ 12                                                    ANALYSIS

¶ 13        In this appeal, the defendant makes three arguments urging reversal of his UUWF conviction. His first two arguments arise from our supreme court's decision in *Aguilar*, which held that the statutory provision underlying his 2010 conviction for AUUW was unconstitutional. *People v. Aguilar*, 2013 IL 112116, ¶ 20. As a third argument, the defendant contends that the police search after the August 2011 traffic stop that resulted in the recovery of a weapon violated the United States Constitution and the Illinois Constitution.

¶ 14        We first address the defendant's argument that the court should reverse his UUWF conviction because the State failed to prove beyond a reasonable doubt that he had a felony conviction at the time of his 2011 arrest, a necessary element of the UUWF offense. See 720 ILCS 5/24-1.1(a) (West 2012) ("It is unlawful for a person to knowingly possess on or about his person *** any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction."). Specifically, the defendant contends that his 2010 felony conviction for AUUW could not be a valid predicate offense to support his UUWF conviction because the statute under which he was convicted of AUUW was declared unconstitutional by our supreme court in *Aguilar*.

¶ 15        We note that, as this argument presents a pure question of law, our standard of review is *de novo*. See *People v. Chapman*, 194 Ill. 2d 186, 217 (2000).

¶ 16        In *Aguilar*, decided in 2013, our supreme court determined that section 24-1.6(a)(1), (a)(3)(A), (d) of the AUUW statute, in prohibiting possession of an "uncased, loaded and immediately accessible" firearm outside the home, (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008)), violated the second amendment of the United States Constitution. *Aguilar*, 2013 IL 112116, ¶¶ 20-21. Our supreme court in *Aguilar* relied upon the United States Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago, Illinois*, 561 U.S. 742 (2010), which recognized that the second amendment protects the right of citizens to bear arms for self-defense outside the home. See *Aguilar*, 2013 IL 112116, ¶¶ 20-21. Since section 24-1.6(a)(1), (a)(3)(A), (d), and its resulting Class 4 AUUW offense, "categorically prohibit[ed] the possession and use of an operable firearm for self-defense outside the home," our supreme court concluded that it "amount[ed] to a wholesale statutory ban on the exercise of a personal right that is specifically named in and guaranteed by the United States Constitution." *Id.* ¶ 21. Accordingly, our supreme court held that this section of the statute, and its resulting Class 4 AUUW offense, were facially unconstitutional. *Id.*

¶ 17        The defendant contends that, pursuant to *Aguilar*, his AUUW offense is void *ab initio* and cannot be used as a predicate offense for a UUWF charge. Several recent cases in our court have addressed the issue of whether a Class 4 AUUW conviction can serve as a predicate offense in light of our supreme court's holding in *Aguilar*. In *Dunmore*, the defendant had pleaded guilty to a Class 4 AUUW conviction in exchange for a sentence of two years' probation. *People v. Dunmore*, 2013 IL App (1st) 121170. The State subsequently sought to revoke his probation after he was found to have committed another criminal offense. *Id.* ¶ 7.

The defendant appealed the revocation of his probation; while his appeal was pending, our supreme court decided *Aguilar*. *Id.* In response to *Aguilar*, the appellate court in *Dunmore* found that it had "an independent duty to vacate void orders," regardless of whether the defendant's appeal sought review of that issue. *Id.* ¶ 9. Accordingly, the court reversed the *Dunmore* defendant's AUUW conviction because, pursuant to *Aguilar*, it arose from a facially unconstitutional statute. *Id.* ¶ 10.

¶ 18    Following *Dunmore*, at least two decisions of this court have vacated a defendant's UUWF conviction (the same charge that is at issue in this appeal) on the grounds that it was premised on an AUUW conviction held unconstitutional under *Aguilar*. First, in *McFadden*, this court vacated the defendant's UUWF conviction because it was premised on a prior Class 4 AUUW offense. *People v. McFadden*, 2014 IL App (1st) 102939. Although it did not involve a probation revocation as in *Dunmore*, the court in *McFadden* found that prior decision significantly instructive. *Id.* ¶ 41. In reviewing the defendant's direct appeal of his UUWF conviction, the *McFadden* court held that it was "bound to apply *Aguilar* and vacate [the conviction] because the State did not prove an essential element of the offense where it alleged in the charging instrument and proved at trial a predicate offense that has been declared unconstitutional and void *ab initio*." *Id.* ¶ 43. The *McFadden* court stated further that "[a] void conviction for the Class 4 form of AUUW found to be unconstitutional in *Aguilar* cannot now, nor can it ever, serve as a predicate offense for any charge." *Id.*

¶ 19    More recently, our court has expressly reaffirmed *McFadden* and held that a void Class 4 AUUW conviction could not stand as a predicate offense for a subsequent UUWF conviction. See *People v. Claxton*, 2014 IL App (1st) 132681. There, on direct appeal of his UUWF conviction, akin to both *McFadden* and the facts presented in this case, the *Claxton* defendant claimed that his prior AUUW conviction could not stand as a predicate offense for the subsequent charge because it was deemed void *ab initio* by *Aguilar*. *Id.* ¶¶ 18-19. The court relied on the precedent established by *McFadden* and reversed the defendant's UUWF conviction, stating that his Class 4 AUUW conviction "cannot serve as an essential element of his UUWF" charge. *Id.* ¶ 20.

¶ 20    Moreover, in analogous cases not directly concerning the UUWF statute, our appellate court has also held that an AUUW conviction cannot stand as a qualifying predicate offense post-*Aguilar*. In *Fields*, this court held that an AUUW conviction made void by *Aguilar* could not be used as a predicate offense for a subsequent armed habitual criminal charge and thus vacated the defendant's armed habitual criminal conviction. *People v. Fields*, 2014 IL App (1st) 110311, ¶ 44. Later, in *Cowart*, this court expressly reaffirmed the principles of *Fields* and *McFadden* and reversed the defendant's armed habitual criminal charge on the same grounds. *People v. Cowart*, 2015 IL App (1st) 113085. In that case, this court found that, due to the impact of *Aguilar*, an AUUW conviction under the invalidated statute could not serve as a predicate offense for *any* subsequent criminal charge. *Id.* ¶ 47.

¶ 21    The State's argument on appeal concedes that the statutory provision which gave rise to the 2010 AUUW charges against the defendant was subsequently determined to be unconstitutional in *Aguilar*. The State also acknowledges this court's holdings in *McFadden* and *Fields*, but urges that they were "wrongly decided." Instead, the State argues that the defendant's UUWF conviction was proper because it proved beyond a reasonable doubt that the defendant was a convicted felon at the time he possessed a weapon in 2011 and was

charged with UUWF–regardless of the subsequent *Aguilar* decision invalidating the statute underlying his prior AUUW felony.

¶ 22　　Thus, the State contends that it is the status of the prior felony conviction at the time of the firearm possession which should control the analysis of whether a defendant has a predicate felony on which to base a UUWF charge. In the State's view, a convicted felon's "firearm disability" remains intact and enforceable unless the relevant conviction is reversed, vacated, pardoned, or declared void *prior to* the date of his subsequent arrest for UUWF, regardless of whether the prior conviction is susceptible to a collateral attack on constitutional grounds or altered in any way. In other words, the State's position is that "a conviction for being a felon-in-possession remains valid even if the prior conviction on which it is based is later expunged, vacated *nunc pro tunc*, or found to be unconstitutional and void *ab initio.*" Thus, the State contends that because the defendant's 2010 felony AUUW conviction was valid at the time of his 2011 arrest (because *Aguilar* had not yet been decided), that prior conviction sufficed to prove this element of the UUWF offense beyond a reasonable doubt.

¶ 23　　In support of its argument, the State cites only to cases decided by federal courts and those of other states. Foremost among these cases is *Lewis v. United States*, in which the United States Supreme Court analyzed a federal statute with provisions analogous to our own UUWF statute and its applicability to individuals who may have grounds to attack their prior felony convictions. *Lewis v. United States*, 445 U.S. 55 (1980). In *Lewis*, the defendant claimed that he had been convicted of a predicate felony without being provided counsel, a process which the Supreme Court subsequently declared unconstitutional. *Id.* at 57-58 (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)). Consequently, the *Lewis* defendant argued that the constitutional infirmity of the *process* by which he was convicted of the predicate felony should preclude that conviction from being used as a predicate offense for a subsequent criminal charge under the federal felon-in-possession statute. *Id.* The Supreme Court disagreed, affirming his conviction and holding that the plain meaning of the federal statute imposed a "firearm disability" on every convicted felon "until the conviction is vacated or the felon is relieved of his disability by some affirmative action, such as a qualifying pardon or a consent from the Secretary of the Treasury," regardless of whether the predicate conviction was susceptible to a collateral attack on constitutional grounds. *Id.* at 60-61. Notably, the Supreme Court also based its decision, in part, on the fact that the defendant could have, but did not pursue a collateral attack on his predicate felony during the intervening years between *Gideon*'s holding and his subsequent UUWF arrest. *Id.* at 64.

¶ 24　　We note that the State has made this argument derived from the *Lewis* holding before, in other cases interpreting the effect of *Aguilar*. Nevertheless, as this court has repeatedly noted, *Lewis* is inapplicable in that it involved a predicate felony *susceptible to constitutional challenge* rather than a conviction under a *facially unconstitutional* statute, as is the case with *Aguilar*-based appeals involving the AUUW statute. See *People v. Cowart*, 2015 IL App (1st) 113085, ¶ 48; *People v. Claxton*, 2014 IL App (1st) 132681. This distinction is instructive. In a previous case arising from *Aguilar*, this court has highlighted the significance of a judgment holding a criminal statute to be facially unconstitutional and the particular impact which it may have on subsequent cases. *Id.* ¶ 18. A statute is facially unconstitutional only where there are no circumstances in which it could be validly applied. *Id.* (noting that it is "the most difficult [statutory] challenge to make"); see also *People v.*

*Davis*, 2014 IL 115595, ¶ 25. As such, a statute which is unconstitutional on its face may criminalize behavior which is beyond the State's power to punish. *Claxton*, 2014 IL App (1st) 132681, ¶ 18. As this court has previously noted, such a holding of facial unconstitutionality should be enforced retroactively because facially unconstitutional statutes can "produce a class of persons convicted of conduct the law does not make criminal." (Internal quotation marks omitted.) *Id.* (noting the distinction between such holdings and those producing new rules of procedure which "merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise" (internal quotation marks omitted) (quoting *Davis*, 2014 IL 115595, ¶ 36)). Because *Aguilar* held that the Class 4 AUUW offense produced such a class of persons subject to criminal liability for constitutionally protected conduct (firearm possession), its determination that those convictions are void *ab initio* should be applied retroactively to cases on appeal, including this one. See *id.*

¶ 25 Based on the foregoing precedent, our courts have already answered the question presented here. Our court's logic in *McFadden*, which decided the precise issue in this case and which our courts have expressly reaffirmed, remains persuasive. The defendant's UUWF conviction must be reversed because the predicate felony on which it was premised is void *ab initio*. See *McFadden*, 2014 IL App (1st) 102939; *Claxton*, 2014 IL App (1st) 132681. *Aguilar* held that the statutory provision which created the Class 4 version of an AUUW charge was facially unconstitutional. Because the defendant here pled guilty to this Class 4 AUUW offense, his felony conviction in 2010 must now be considered void. As such, that felony conviction cannot be used as a predicate offense for subsequent criminal charges. As we recently stated in *Cowart*: "We find no reason to deviate from the holdings in *Fields* and *McFadden*. Because the defendant's prior conviction for AUUW was based on a statute that was found to be unconstitutional and void *ab initio* in *Aguilar*, we cannot allow it to stand as a predicate offense *** in the instant case." *Cowart*, 2015 IL App (1st) 113085, ¶ 47. Thus, the State failed to prove an essential element of its cause of action against the defendant.

¶ 26 Furthermore, we are neither swayed by the State's arguments that *Dunmore*, *McFadden*, and *Fields* are wrongly decided, nor do we agree that the decisions in other states or federal courts warrant departing from the well-settled precedent of our courts. The State continues to advance arguments that this court has held to be inapplicable. Indeed, in *Cowart*, this court similarly rejected the State's argument that *Fields* and *McFadden* "were wrongly decided because those cases failed to consider how the defendant's previous AUUW conviction was still valid at the time he possessed the firearm in the [subsequent] case." *Id.* ¶ 48. Accordingly, because the State could not prove beyond a reasonable doubt an element of the UUWF offense–namely, a valid prior felony–we reverse the defendant's conviction and vacate his sentence for the offense of unlawful use of a weapon by a felon. See *id.* ¶ 47 (finding the State could not "prove beyond a reasonable doubt an element of the offense *** where the statute underlying the AUUW conviction was found to be unconstitutional and thus, the conviction cannot serve as a predicate offense for any charge").

¶ 27 Although we conclude that the 2010 AUUW conviction could not serve as a predicate offense for the defendant's 2011 UUWF conviction, we emphasize, as we did in *Cowart*, that this opinion does not vacate the defendant's 2010 AUUW conviction in that prior case. See *id.* ¶ 49. Likewise, we need not address whether formal proceedings for collateral relief may be available to the defendant to vacate his conviction in that case. *Id.*

¶ 28　　　　Apart from his arguments derived from *Aguilar*, the defendant's brief further claims that his UUWF conviction should be overturned because both the traffic stop and the pat-down search which led to the discovery of the handgun violated his right to be free from unreasonable search and seizure pursuant to the fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. However, we have already determined that application of *Aguilar* necessitates a reversal of the defendant's UUWF conviction, regardless of whether the underlying searches that led to his arrest were constitutional. Thus, we need not decide the merits of this additional argument for reversal.

¶ 29　　　　For the foregoing reasons, we reverse the judgment of the circuit court of Cook County.

¶ 30　　　　Reversed.