2023 IL App (1st) 200448-U

No. 1-20-0448

Second Division
June 27, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| | ) | Appeal from the |
| THE PEOPLE OF THE STATE OF | ) | Circuit Court of |
| ILLINOIS, | ) | Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | No. 03 CR 25466-01 |
| v. | ) | |
| | ) | Honorable |
| JOSEPH PETTIS, | ) | Timothy Joyce |
| | ) | Judge, Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the circuit court's denial of defendant's petition for certificate of innocence where, although defendant was found innocent of the AUUW charge, his unsentenced conviction for UUWF stands, and the statute does not allow for a partial certificate of innocence. We remand for any additional relief available as a result of the court's vacatur of the AUUW conviction.

¶ 2    Following a bench trial, defendant-appellant Joseph Pettis was found guilty of two counts

of aggravated unlawful use of a weapon (AUUW) and two counts of unlawful use of a weapon by

a felon (UUWF) and sentenced to four years' imprisonment. Fifteen years later, defendant filed a petition for postjudgment relief, asserting that his AUUW conviction should be vacated because the Illinois Supreme Court found the applicable statutory provision unconstitutional in *People v. Aguilar*, 2013 IL 112116. The circuit court granted defendant relief under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2018)) and vacated his AUUW conviction pursuant to *Aguilar*. Defendant subsequently filed a petition for a certificate of innocence (COI) pursuant to section 2-702 of the Code (735 ILCS 5/2-702 (West 2018)), which the circuit court denied. Defendant, proceeding *pro se*, appeals from that denial. For the reasons that follow, we affirm and remand.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was charged by information with two counts of AUUW (720 ILCS 5/24-1.6(a)(1), (a)(3)(A); 5/24-1.6(a)(2), (a)(3)(A) (West 2002)) and two counts of UUWF (720 ILCS 5/24-1.1(a) (West 2002)). As relevant here, we specifically note that the counts of AUUW were brought under different sections of the AUUW statute. Defendant waived his right to a jury trial, and a bench trial was held on July 14, 2004. The evidence presented at trial was as follows.

¶ 5     On November 2, 2003, at approximately 9:45 p.m., Chicago police officer James Shields and two other officers were in a marked squad car, patrolling near 620 North Hamlin Avenue. Officer Shields was in the front passenger seat of the car. As the car was traveling southbound, he observed defendant walking alone northbound on Hamlin Avenue. From about 25 feet away, he observed defendant reach into his waistband, pull out a "blue-steel snubbed handgun," place the weapon in the left inside jacket pocket, and snap the letter jacket closed. Officer Shields testified that the streetlights on Hamlin Avenue were working that night.

¶ 6      The officers stopped the car and approached defendant. Officer Shields detained defendant immediately. As he was securing him, defendant stated to Officer Shields that "there was no reason to search, that he had a handgun, a pistol, in his jacket pocket." A "small, snub-nose colt detective special 38-caliber handgun" was recovered. The handgun was loaded. Defendant was placed in the backseat of the squad car and transported to the police station. While in the car, Officer Shields informed defendant of his *Miranda* rights and defendant stated that he had purchased the gun for $40 from a "hype," which is a "street term for a drug user," and he was carrying it for his personal protection.

¶ 7      The parties stipulated that defendant had a prior felony conviction.

¶ 8      Defendant moved for a directed finding, which the circuit court denied.

¶ 9      Defendant testified that on November 3, 2003, at approximately 9:45 p.m., he was walking southbound on the 600 block of Hamlin Avenue on the way to his girlfriend's house when an unmarked "gray Crown Victoria" police car pulled up behind him on the street and stopped directly next to him. Two police officers in plainclothes stepped out of the police car and called him over to them, using his first name, "Joe." He testified that Officer Shields searched him but did not recover anything from his person. The officers handcuffed defendant, put him in the backseat of the police car, and took him to the police station. While in the car, the officers asked defendant for information about homicides that had occurred in the area, and defendant responded that he did not know anything. He denied making any statements about having a gun.

¶ 10      On August 19, 2004, the circuit court found defendant guilty of the charged offenses. Defendant filed a motion for a new trial, which was denied. The circuit court sentenced defendant to four years' imprisonment on count 1 for the offense of AUUW. Defendant did not pursue a direct appeal.

¶ 11　　In 2013, the Illinois Supreme Court decided *Aguilar*, 2013 IL 112116, which invalidated a portion of the AUUW statute prohibiting the unlawful use of a weapon. See also *People v. Burns*, 2015 IL 117387, ¶ 25 (clarifying that section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute is facially unconstitutional "without limitation").

¶ 12　　On October 22, 2019, defendant filed a "Petition for Post-Judgement Relief," wherein he cited to *Burns* and argued that his AUUW conviction was void because the Illinois Supreme Court found the applicable statutory provision facially unconstitutional. He thus requested "an order vacating and expunging the judgement of conviction and sentence."

¶ 13　　On November 6, 2019, the circuit court granted defendant relief under section 2-1401 and, and "per *Aguilar*," vacated his AUUW conviction, which the court referred to as "count 1."

¶ 14　　On December 3, 2019, defendant filed a "Petition for Certificate of Innocence," claiming that he was entitled to a COI because the crime for which he was convicted was not a crime as the Illinois Supreme Court had found the applicable statute for that crime unconstitutional.

¶ 15　　On January 16, 2020, the circuit court orally denied defendant's COI petition. On the record, the court stated the following:

　　　"On Joseph Pettis, Mr. Pettis previously had his so-called [*Aguilar/Burns*] conviction in Count 1 vacated pursuant to Section 2-1401 back in November of 2019 by this court.

　　　The order was entered to that effect, sent to the Illinois Department of Corrections[,] where Mr. Pettis is being held on some other unrelated matter. He has now filed under this case number a petition for a Certificate of Innocence claiming that he's entitled to such certificate by virtue of the fact that *Aguilar* rendered one of the counts in this case, or *Burns* rendered one of the counts in this case unconstitutional. He is incorrect in that regard. His

petition for a Certificate of Innocence is otherwise insufficient to warrant him relief. His petition is denied. The court will enter a one page written order."

¶ 16 Defendant filed a motion for reconsideration of his petition, which the circuit court denied.

¶ 17 This timely appeal followed.

¶ 18                                                II. ANALYSIS

¶ 19 Defendant's main claim on appeal is that the circuit court erred in denying his request for a COI. To that end, he asserts that his conviction and sentence for the offense of AUUW "must be voided" based on the Illinois Supreme Court's holdings in *Burns*, 2015 IL 117387, and *Aguilar*, 2013 IL 112116, that the statutory provision underlying his AUUW conviction was facially unconstitutional. For support, defendant cites to *People v. McClinton*, 2018 IL App (3d) 160648.

¶ 20 In response, the State argues that, despite the vacatur of defendant's AUUW conviction, he still remains convicted of the other charges in the information and he failed to show that he is innocent of all of the offenses.

¶ 21 Initially, we do not disagree that defendant is innocent of count 1 of the indictment, which was the offense of AUUW brought under subsection 24-1.6(a)(1), (a)(3)(A), where that subsection was declared facially unconstitutional and therefore void *ab initio*. See *In re N.G.*, 2018 IL 121939, ¶ 50 (stating that any conviction based on a void *ab initio* statute should be treated as if the law had never been passed and never existed); see also *People v. Smith*, 2021 IL App (1st) 200984, ¶ 24 (AUUW under the void statutory provision is "not a crime."). However, defendant fails to acknowledge that in this case he was charged with four offenses and the circuit court found him guilty of *all* charged offenses following the bench trial. The court then appears to have merged the counts together and sentenced defendant on count 1. Under the circumstances before us, the merger has no effect on the findings of guilt as to the other offenses. This court has held that when a

sentenced conviction is vacated, the merger of the unsentenced convictions "fails" and a final judgment and sentence should be entered on one of the valid unsentenced convictions. *People v. Simon*, 101 Ill. App. 3d 89, 101 (1981) (citing *People v. Zazzetti*, 69 Ill. App. 3d 588, 593 (1979)); see also *People v. Akins*, 2014 IL App (1st) 093418-B, ¶ 16 (finding that the merger of unsentenced convictions is "no longer in effect" when the sentenced conviction is vacated). In fact, in *Aguilar*, our supreme court reversed the defendant's AUUW conviction, remanded the action to the circuit court "for imposition of sentence" on the unsentenced unlawful possession of a firearm conviction, and instructed that "[t]he sentence imposed [for that conviction] shall not exceed the sentence imposed on the AUUW conviction." 2013 IL 112116, ¶ 30.[1] Given the court's mandate in *Aguilar*, we are inclined to agree with the panel in *Smith*, which stated that "[n]either the merger of counts nor the vacating of a conviction under the one-act, one-crime doctrine negates a guilty finding." 2021 IL App (1st) 200984, ¶ 28. As such, despite count 1 being vacated, there remain three offenses for which defendant was found guilty, namely AUUW brought under section 24-1.6(a)(2), (a)(3)(A), and two counts of UUWF. However, because AUUW under section 24-1.6(a)(2), (a)(3)(A), was expressly found facially unconstitutional in *People v. Mosley*, 2015 IL 115872, ¶ 25, based on the reasoning of *Aguilar*, going forward we confine our analysis to the two counts of UUWF.

---

[1] A petition for a certificate of innocence is collateral to criminal proceedings and is civil in nature. See *People v. Terrell*, 2022 IL App (1st) 192184, ¶ 40; see also 735 ILCS 5/2-702(j) ("The decision to grant or deny a certificate of innocence shall be binding only with respect to claims filed in the Court of Claims and shall not have a *res judicata* effect on any other proceedings."). We note that, when the circuit court vacated defendant's conviction for AUUW pursuant to *Aguilar*, no final judgment and sentence was then entered on the outstanding UUWF charge. See *People v. Calvillo*, 2022 IL App (1st) 200886, ¶ 21 (stating that when an AUUW conviction is vacated, "leaving in its stead an unsentenced constitutionally valid finding of guilt on a different charge, the proper course is to remand for sentencing on the constitutionally valid count"). Given that the matter before us is a collateral civil proceeding, we believe remand to be the proper course of action.

¶ 22   The singular question before this court then is whether the COI statute allows for a petitioner to obtain a COI where only one of the offenses with which he was charged and of which he was found guilty has been vacated pursuant to *Aguilar*. The answer may be found in this court's recent decision in *People v. Moore*, 2020 IL App. (1st) 190435, which we discuss in greater detail later in this disposition. First, as did the court on *Moore*, we set out the guiding principles which govern our review.

¶ 23   Generally, we review the grant or denial of a COI for an abuse of discretion (see *Rudy v. People*, 2013 IL App (1st) 113449, ¶ 11); however, where, as here, the issue involves the interpretation of a statute, our review is *de novo* (see *People v. Simon*, 2017 IL App (1st) 152173, ¶ 20).

¶ 24   A reviewing court's primary goal in construing a statute is to ascertain and give effect to the legislature's intent. *People v. Palmer*, 2021 IL 125621, ¶ 53. The best indicator of the legislature's intent is the language of the statutory provision. *People v. Fields*, 2011 IL App (1st) 100169, ¶ 18. The statute should be considered as a whole and the words used should be given their plain and ordinary meaning. *Palmer*, 2021 IL 125621, ¶ 53. In interpreting a statute, no part should be disregarded or rendered superfluous (*People v. Warner*, 2022 IL App (1st) 210260, ¶ 13), and we must presume that "the legislature did not intend absurd, inconvenient, or unjust results" (*Palmer*, 2021 IL 125621, ¶ 53).

¶ 25   With these principles of interpretation in mind, we turn to the statutory framework for the issuance of COIs.

¶ 26   Clearly set out in the statute's statement of legislative intent, the purpose of obtaining a COI is to provide the wrongly incarcerated with an avenue to obtain monetary relief in the Court of Claims against the State. 735 ILCS 5/2-702(a) (West 2018); see also *Warner*, 2022 IL App (1st)

210260, ¶ 32 (stating that the statute's aim is to "benefit men and women that have been falsely incarcerated through no fault of their own"). Subsection (b) defines who may petition for a COI. See 735 ILCS 5/2-702(b) (West 2018). Subsection (c) and (d) specify the necessary contents of the COI petition. See *id.* § 2-702(c), (d).

¶ 27 The statute then sets forth the requirements to obtain a certificate of innocence under section 2-702(g) of the Code. See *id.* § 2-702(g). A petitioner must prove by a preponderance of the evidence that:

"(1) the petitioner was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;

(2)(A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either the petitioner was found not guilty at the new trial or the petitioner was not retried and the indictment or information dismissed; or (B) the statute, or application thereof, on which the indictment or information was based violated the Constitution of the United States or the State of Illinois;

(3) the petitioner is innocent of the offenses charged in the indictment or information or his or her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State; and

(4) the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction." 735 ILCS 5/2-702(g)(1)-(4) (West 2018).

¶ 28 Finally, subsection (h) provides: "If the court finds that the petitioner is entitled to a judgment, it shall enter a certificate of innocence finding that the petitioner was innocent of all offenses for which he or she was incarcerated." 735 ILCS 5/2-702(h) (West 2018).

¶ 29    We now turn our attention to *Moore*, the reasoning and analysis with which we concur. In *Moore*, following a bench trial, the petitioner was convicted of four offenses: being an armed habitual criminal (AHC), robbery, UUWF, and aggravated fleeing of a peace officer. 2020 IL App (1st) 190435, ¶ 6. Because one of the predicate felonies for the offense of AHC was a 2004 conviction for AUUW, the petitioner's conviction for AHC was later vacated pursuant to *Aguilar*, 2013 IL 112116. *Id.* ¶¶ 6, 8. The petitioner sought a COI as to the AHC count. *Id.* ¶ 9. The circuit court granted a "partial" COI as to the vacated AHC conviction only. *Id.* The State appealed and the circuit court stayed its order pending disposition of the appeal. *Id.*

¶ 30    On appeal, this court reversed and held that "[s]ection 2-702 does not permit the issuance of a COI unless the petitioner is deemed innocent of *all* charges in the indictment for which the petitioner was convicted." (Emphasis in original.) *Id.* ¶ 3. In so concluding, the court examined the pertinent parts of the COI statute which we include here.

¶ 31    Looking at subsection (g), the court stated that the second element "strongly suggests that a petitioner must be innocent of *all* offenses charged in the indictment, not just some." (Emphasis in original.) *Id.* ¶ 24. The court found that paragraphs (2)(A) and (2)(B) did not apply to the defendant, and we come to the same conclusion here.

¶ 32    Paragraph (2)(A), which provides "the judgment of conviction was reversed or vacated, and the indictment or information dismissed[,]" does not apply because the charges for UUWF have not been vacated and thus, the indictment has not been dismissed. The *Moore* court also pointed out that the inclusion of the phrase, "and the indictment or information dismissed[,]" suggests that the legislature intended the statute to apply "*only* to situations where *all* the charges leading to *** incarceration were legally invalid[.]" (Emphases original.) *Id.* ¶ 26.

¶ 33 Paragraph (2)(B), which provides "the statute, or application thereof, on which the indictment or information was based violated the Constitution of the United States or the State of Illinois[,]" does not apply because the indictment here was based on multiple statutes, including a different statute for the two counts of UUWF. This is in contrast to the language of paragraph (2)(B), which "speaks of a singular 'statute *** on which the indictment or information was based.' " *Id.* ¶ 28 (quoting 735 ILCS 5/2-702(g)(2)(B) (West 2018)). Thus, the second element of subsection (g) cannot be satisfied by only one of the counts of the indictment against defendant being vacated. See *id.*

¶ 34 The third element requires that "the petitioner is innocent of the *offenses* charged in the indictment or information or his or her *acts or omissions* charged in the indictment or information did not constitute a felony or misdemeanor against the State[.]" (Emphases added.) 735 ILCS 5/2-702(g)(3) (West 2018). The *Moore* court found that the legislature's use of the plural, as opposed to the singular, indicates that a partial COI cannot be obtained. See *Moore*, 2020 IL App (1st) 190435, ¶¶ 29-30.

¶ 35 The *Moore* court then stated that subsection (h) plainly does not provide authority for a judge to issue a COI where the petitioner has been found innocent of only *some* of the offenses that led to imprisonment. *Id.* ¶ 31. The subsection clearly provides that the court should issue a COI where it finds that "the petitioner was innocent of *all offenses* for which he or she was incarcerated." (Emphases added.) 735 ILCS 5/2-702(h) (West 2018). This same language is also included in subsection (b), stating that the requisite petition should request a COI "finding that the petitioner was *innocent of all offenses for which he or she was incarcerated*." (Emphases added.) *Id.* § 2-702(b). The court concluded that the effect of these subsections is that there is no statutory

authority for a petitioner to request, or for a court to issue, "a finding of innocence on some, but not all, offenses that led to incarceration." *Moore*, 2020 IL App (1st) 190435, ¶¶ 31-33.

¶ 36   Based on its interpretation of the COI statute, the *Moore* court held that section 2-702 does not authorize a COI where the petitioner was correctly incarcerated based on at least one conviction, regardless of the petitioner's improper incarceration based on another vacated conviction.

¶ 37   Applying *Moore*'s interpretation to the instant case, we must conclude that the invalid, and subsequently vacated, conviction for AUUW does not entitle defendant to a COI where he was charged and found guilty of two other offenses. Certainly, defendant's sentence of four years' imprisonment was pursuant to the now-vacated AUUW conviction; however, as stated, the vacatur of the sentenced conviction negates the merger and the unsentenced convictions, and their accompanying findings of guilt, stand. As such, defendant would need to prove his innocence for those remaining unsentenced convictions to be eligible for a COI.

¶ 38   Before the circuit court and before this court, defendant solely contends that he is innocent as to count 1 of AUUW because the statutory provision was rendered unconstitutional pursuant to *Aguilar*. He does not set forth any allegations showing that he is innocent of the other counts for which he was charged and of which he was found guilty. Because he did not provide the court with any pleading, evidence, or argument as to his innocence as to the other offenses, we must find that defendant has not shown his innocence as to all of his offenses for which he was properly incarcerated and is not entitled to a COI. See *Smith*, 2021 IL App (1st) 200984, ¶ 33 (finding that the defendant, whose AHC conviction was vacated because it was predicated on a prior AUUW conviction, was not entitled to a COI because he was found guilty of three other offenses).

¶ 39 We also find *People v. McClinton*, 2018 IL App (3d) 160648, upon which defendant relies, inapposite here. There, the defendant was found guilty of AUUW under the now-void statutory provision. *Id.* ¶ 5. On direct appeal, this court reversed her conviction for AUUW based on *Aguilar*. *Id.* ¶ 6. Although she was charged with other offenses, the State nol-prossed the remaining charges following her direct appeal. *Id.* She was later denied a COI because she "was, and is not, innocent of this offense on its facts" regardless of the statute being declared unconstitutional and the State moving to nol-press her other charges. *Id.* ¶ 7. The Third District of this court vacated the circuit court's order and remanded for entry of an order awarding the defendant a COI. *Id.* ¶ 22. In so ruling, the court recognized that the petitioner did not "intentionally cause or bring about her conviction" where the statute that criminalized her actions was void *ab initio*. *Id.* ¶ 21. Although the defendant in *McClinton* was charged with other offenses, those were nol-prossed by the State and were not considered by the court in determining that the defendant was entitled to a COI.[2] In contrast, defendant here was found guilty of multiple other offenses, in addition to the one count of AUUW that was later vacated under *Aguilar*.

¶ 40 Accordingly, we conclude that the circuit court properly denied petitioner's request for a COI.

¶ 41 Defendant also claims that he was denied due process because the circuit court did not issue a written order with factual findings when it denied his request for a certificate of innocence.

---

[2] We note that there appears to be some debate within the First District of the appellate court as to whether a petitioner must prove their innocence as to nol-prossed charges to obtain a COI under section 2-702. Compare *Smith*, 2021 IL App (1st) 200984, ¶ 31 (stating that the nol-prossed charges in *McClinton* were "irrelevant" to the defendant's right to a COI because there were no findings of guilt as to any of those charges), with *Warner*, 2022 IL App (1st) 210260, ¶ 42 ("[T]o obtain a COI, petitioner was required to show his innocence as to the offenses charged in the information including those that were nol-prossed pursuant to the negotiated plea agreement."). That issue is not before us in this case and, thus, we express no opinion on the matter.

He further asserts that "the circuit court's failure to issue a written finding of fact and/or addressing the relevant authority of [*McClinton*] raises serious concerns of the appearance of bias" by the circuit court judge.

¶ 42 Here, the circuit court orally issued its ruling on the record, stating the following:

"He has now filed under this case number a petition for a Certificate of Innocence claiming that he's entitled to such certificate by virtue of the fact that *Aguilar* rendered one of the counts in this case, or *Burns* rendered one of the counts in this case unconstitutional. He is incorrect in that regard. His petition for a Certificate of Innocence is otherwise insufficient to warrant him relief. His petition is denied. The court will enter a one page written order."

A written order was also in the record stating that the petition was denied.

¶ 43 We reject defendant's argument where there is nothing in the COI statute requiring the circuit court to enter a written order containing findings of fact and conclusions of law. Defendant does not direct this court to any particular rule or statutory provision mandating a written order with findings of fact and he does not cite to any cases to support his argument. Moreover, our review was *de novo* and defendant cannot show that prejudice resulted from the circuit court's lack of written factual findings. See also *In re Rita P.*, 2014 IL 115798, ¶ 51 ("[A]lthough factual findings may provide an explanation or reason for the trial court's decision, it is the correctness of the court's ruling, and not the correctness of its reasoning, that is under review.").

¶ 44 In regards to defendant's claim of judicial bias, we find nothing in the record to support his allegations. It is presumed that trial judges are impartial, and only the most extreme circumstances warrant disqualifying a judge due to judicial bias. *People v. Jackson*, 205 Ill. 2d 247, 276 (2001). For a defendant to demonstrate bias or prejudice on the part of the circuit court, "the record must

show that there was active personal animosity, hostility, ill will or distrust toward the defendant and, absent such a showing, a court will not conclude that there was actual prejudice which prevented or interfered with a fair hearing." *People v. Johnson*, 199 Ill. App. 3d 798, 806 (1990).

¶ 45    Defendant's only allegation of judicial bias is that the judge should have entered a written order with "factual or legal reasoning" for the denial and addressed the case he cited to in his petition. For support, he cites to *Gacho v. Wills*, 986 F.3d 1067, 1068 (7th Cir. 2021), which involved a Cook County trial court judge who was sent to federal prison for "soliciting cash for acquittals" for years and there was evidence that the judge had been bribed in relation to a codefendant. A comparison can hardly be made to the case before us. Merely because the court did not explain its reasoning for denying the petition does not give rise to any suggestion of judicial bias. See also *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002) ("A judge's rulings alone almost never constitute a valid basis for a claim of judicial bias or partiality.").

¶ 46    He next argues that he was denied due process when the Office of the State Appellate Defender (OSAD) refused to represent him on appeal. We outright reject this contention as OSAD is not statutorily authorized to represent defendants in civil matters. According to the State Appellate Defender Act, "[t]he State Appellate Defender shall represent indigent persons on appeal in criminal and delinquent minor proceedings, when appointed to do so by a court under a Supreme Court Rule or law of this State" (725 ILCS 105/10(a) (West 2018)), and proceedings under the certificate of innocence statute are civil in nature. *People v. Terrell*, 2022 IL App (1st) 192184, ¶ 40. Additionally, nothing in the COI statute extends the powers of OSAD to represent indigent petitioners in these proceedings. For that reason, defendant's argument is meritless.

¶ 47    In sum, the circuit court properly denied defendant's petition for a COI and there was no violation of defendant's due process rights.

¶ 48     Before concluding, we briefly return to *Moore* to determine the appropriate action going forward. There, the court recognized that where a defendant is convicted of two offenses, one validly and one wrongly, a defendant could serve more time in prison than he otherwise would "either because he received a greater sentence for the invalid conviction or because the sentences ran consecutively, not concurrently." *Moore*, 2020 IL App (1st) 190435, ¶ 39. In *Moore*, the petitioner was sentenced to 15 years for the later-vacated AHC, 10 years for robbery, and 6 years for aggravated fleeing, with the sentences running concurrently. *Id.* ¶ 40. The court acknowledged that the petitioner spent more time in prison than he should have but nonetheless concluded that section 2-702 did not provide a remedy in that particular circumstance. *Id.* ¶¶ 41-42. Nonetheless, the court stated that the petitioner was not foreclosed from seeking redress in the Court of Claims for his time spent wrongly incarcerated or to receive an expungement of his conviction, despite the lack of a COI, and thus, the court reversed and remanded "in the event petitioner may seek any such additional remedy or relief." *Id.* ¶¶ 43-45.

¶ 49     Here, defendant was sentenced to four years' imprisonment for the now-vacated offense of AUUW, which was a class 2 felony with a sentencing range of three to seven years. He was also found guilty of UUWF, which was class 3 felony with a sentencing range of two to ten years. (720 ILCS 5/24-1.1(e) (West 2002)). As such, it is not clear that defendant wrongfully spent additional time in prison based on the now-vacated AUUW. Nonetheless, we follow *Moore*'s lead and, in addition to our remand for purposes of entry of final judgment and sentence on defendant's UUWF charge, we remand in the event defendant wishes either to seek expungement of the now-vacated AUUW conviction or, if available, other redress related to that charge in particular.

¶ 50                                III. CONCLUSION

¶ 51    For the reasons stated, we affirm the judgment of the circuit court, and, consistent with our findings, the cause is remanded for additional proceedings.

¶ 52    Affirmed and remanded.